### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

**ALAN DALE BLAIR,**
       **Petitioner,**

**v.**                                       **Case No.   5:08cv264/RS/MD**

**WALTER A.  MCNEIL,**
       **Respondent.**

---

## REPORT AND RECOMMENDATION

      **Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 13) to which petitioner has replied (doc. 16).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

## BACKGROUND AND PROCEDURAL HISTORY[1]

Petitioner, Alan Blair, was found guilty of second degree murder by a jury in the Circuit Court of Escambia County, Florida.  He is serving a thirty year sentence. The facts adduced at trial came primarily from Marshall Sharpe, the state's star witness.  Mr. Sharpe testified that on the afternoon of December 10, 2002, he was at the Red Baron Lounge in Pensacola, Florida.  He needed a ride home, so he called a friend, the petitioner.  Mr. Blair came to the lounge, arriving at around 3:00 p.m. He and Mr. Sharpe shot pool for a while and talked to two women whom they had not known before, Lagena Lassiter and Crystal Phillips.  The men left for a while, but came back at around 7:00 that evening.  Ms. Phillips was still there and they had some drinks with her.  At some point Ms. Phillips suggested that they go get some cocaine, so all three got in Mr. Blair's pick-up truck and went to a gas station where Ms. Phillips talked to some people.  A man agreed to take them to where they could get some cocaine and got in the truck with them.  The man directed them to a nearby house.  Ms. Phillips gave the man $80.  He went into the house and came out with five or six rocks of crack cocaine.

They dropped the man back at the gas station and Mr. Blair suggested they go to a remote area off Kingsfield Road on the north side of Pensacola to smoke the crack.  After smoking the crack Mr. Blair and Ms. Phillips got out of the truck and walked behind it.   Mr. Sharpe stayed in the truck drinking beer and smoking cigarettes.  After some minutes he saw Ms. Phillips in the side view mirror as she approached the passenger side, but as she reached the door Mr. Blair grabbed her

---

[1]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Due process requires a state to prove each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  Where there are conflicting inferences and disputes exist, this Court must presume that the jury resolved such conflicts in favor of the prosecution, and must defer to that resolution.  *Martin v. State of Alabama*, 730 F.2d 721,724 (11th Cir. 1984).  Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a part in the court's analysis.

and threw her to the ground.  He choked her, stomped on her, and cut off her clothes with a knife.  Mr. Sharpe also saw Mr. Blair put his ear to her chest several times. Mr. Blair then got back in the truck, drove until they found a trash can and told Mr. Sharpe to throw the clothes in it.  (Doc. 13, ex. C, pp. 133-142).[2]  The two were arrested two or three days later.  Mr. Sharpe lied to the police about going back to the Red Baron Lounge, but later admitted his part in the event.  In return for his testimony against Mr. Blair the state dropped the second degree murder charge against him, leaving only a charge of tampering with evidence.

The defense did not call any witnesses. The court queried Mr. Blair and found on the record that his decision not to testify was intelligent, knowing and voluntary. Mr. Blair also told the court that he had discussed the defense strategy with his counsel, that they made a joint decision not to call any witnesses, and that he was satisfied with counsel's services in representing him (ex. C, pp. 203-208).

Mr. Blair's direct appeals and motion for post-conviction relief pursuant to Rule 3.850, Fla.R.Crim.P. were unsuccessful, and he now brings this timely[3] petition for federal habeas relief.

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective

---

[2]Hereafter all references to exhibits will be to those provided at doc. 13 unless otherwise noted.

[3]Respondent concedes timeliness (doc. 13, p. 4).

Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2008).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's

claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12; *see also Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Jones*, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## OTHER CONTROLLING LEGAL PRINCIPLES

**Exhaustion and Default.**

Respondent contends that Mr. Blair did not fairly present his first ground for relief to the state court for review and is defaulted from doing so now, and that this court therefore should not consider the claim.  It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[5] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  *Duncan*, *supra*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard*, 404 U.S. at 277-78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In *Picard*

---

[5]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

*v. Connor*, *supra*, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," *id.* at 278, 92 S.Ct. at 513, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7, 103 S.Ct. at 278 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).  The only manner in which the habeas petitioner had cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  *Anderson*, 459 U.S. at 7, 103 S.Ct. at 278 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  459 U.S. at 7 and n. 3, 103 S.Ct. at 278 and n. 3.

Years later, the Supreme Court readdressed the "fair presentation" requirement in *Duncan v. Henry*, *supra*.  The *Duncan* Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[6]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." *Duncan*, 115 S.Ct. at 888.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004).  The *Baldwin* Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*  This language, while not part of the Court's holding, provides an instructive and useful rule of thumb.  With regard to this statement, the Eleventh Circuit stated in *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion

---

[6]The petitioner in *Duncan* raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

**requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"** *McNair* **[***v. Campbell***], 315 F. Supp. 2d at 1184 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"**

*Id.*, 416 F.3d at 1302-03 (citations omitted).[7]

The Eleventh Circuit, prior to *Duncan*, had broadly interpreted the "fair presentation" requirement.  However, after *Duncan*, the Eleventh Circuit has taken a more restrictive approach.  For example, in *Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003), the Circuit Court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution.  The court specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause. *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to

---

[7]In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower v. Phillips, supra.* To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 85, 130 L.Ed.2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

**Ineffective assistance of counsel.**

Mr. Blair's second and third grounds for relief in this court are grounded on his contention that he was denied his constitutional right to the effective assistance of counsel.  In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance:  "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.  *Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable

**professional judgment.**

*Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.,* at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

## PETITIONER'S GROUNDS FOR RELIEF

1.      <u>Denial of due process - use of improper jury instruction.</u>

Mr. Blair first contends that the trial court's decision to grant the state's request for a special jury instruction denied him due process.  This claim was not fairly presented to the state courts as a federal claim and this court should not consider it.

On direct appeal Mr. Blair raised the following issue:

**THE TRIAL COURT ERRED IN GIVING THE STATE'S SPECIAL REQUESTED JURY INSTRUCTION #1 BECAUSE THE INSTRUCTION**

**WAS MISLEADING AND NEGATED APPELLANT'S DEFENSE.**

(Ex. I, p. 14).  The jury instruction in question read as follows:

> Mere knowledge that an offense is being committed is not the same as participating with criminal intent, and mere presence at the scene including the display of questionable behavior after the fact, is not sufficient to establish participation.

Mr. Blair argued to the appellate court that while the instruction was a correct statement of the law, in the context of the trial it was confusing and misled the jury to think that the state was proving that Mr. Sharpe was not guilty.  Mr. Sharpe's guilt or innocence had no relevance to the issue being tried, and the effect of the instruction was to negate Mr. Blair's defense.  In support of this claim Mr. Blair cited only Florida cases,[8] and did not mention federal law or the United States Constitution (ex. I, pp. 15-18).

In order to show that he presented the appellate court with a federal claim, Mr. Blair now refers to a case cited by the state in its reply brief, *Hair v. State*, 428 So.2d 760, 763 (Fla. 3rd DCA 1983), and quotes the state's argument that "[i]n order for the unnecessary instruction to constitute reversible error, it must, under the circumstances, be capable of misleading the jury in such a way as to prejudice the defendant's right to a fair trial."  (Doc. 16, p. 4).  This, says Mr. Blair, was sufficient to put the state court on notice that a federal constitutional claim was being presented.  Mr. Blair then argues a *pre-Duncan* case, *Daye v. Attorney General of the State of New York*, 696 F.2d 186 (2nd Cir. 1982), in which the court read the petitioner's claim very broadly, something that *Duncan* now prohibits.  He also cites

---

[8]*Palmore v. State*, 838 So.2d 1222 (Fla. 1st DCA 2003) (trial court's discretion in giving instructions is fairly narrow); *Davis v. State*, 804 So.2d 400 (Fla. 4th DCA 2001) (fundamental error to fail to give a complete and accurate instruction in a criminal case if it relates to an element of the charged offense, but error is subject to harmless error analysis); *Barnes v. State*, 868 So.2d 606 (Fla. 4th DCA 2004) (conviction reversed where instruction confusing and served to negate defendant's only defense); *Giles v. State*, 831 So.2d 1263 (Fla. 4th DCA 2002) (same); *Wadman v. State*, 750 So.2d 655 (Fla. 4th DCA 1999) (same); *Rich v. State*, 858 So.2d 1210 (Fla. 4th DCA 2003) (conviction reversed where trial court instruction negated defense). (Ex. I, pp. 15-18).

various cases holding that an erroneous jury instruction violates due process (*id.* at 5). Those cases, however, did not address the issue of exhaustion because the jury instructions in question had been presented to the state courts as federal claims.

In essence Mr. Blair contends that the *state* court were fairly presented with a *federal* claim by the combination of (1) the state's reference to the right to a fair trial, (2) the fact that a fair trial is a fundamental right, and (3) the fact that giving an improper jury instruction is a due process requirement. That argument has no merit, as it is essentially the same argument made in *Zeigler v. Crosby, supra* (habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the Federal Constitution). Florida's constitution requires a fair trial and due process, and the "fundamental" argument Mr. Blair makes came from *Davis v. State, supra*, a Florida decision. There is nothing more here than scattering (by the state, not by Mr. Blair) some makeshift needles in the haystack, *Zeigler, supra*.

Moreover, Mr. Blair has not cited, nor has the court found, any authority for his argument that he can present a federal claim though the back door by claiming that the state raised it. The burden to present claims is on the petitioner, and the fact that the state used a magic word or phrase is insufficient to place the state court on notice that a federal claim is being raised *by the petitioner.* This claim was not fairly presented to the state court for consideration and, therefore, this court will not review it. Mr. Blair is not entitled to federal habeas relief, and the writ should not issue.

2. <u>Ineffective assistance of counsel - failure to investigate</u>

Mr. Blair's next contention is that his trial counsel was ineffective for failing

to show that Mr. Sharpe was actually the guilty party because there was an apparent shoe print on the victim's body that may have been from Mr. Sharpe's shoe.

### State Court Decision

Mr. Blair presented this claim to the state court in a motion for post-conviction relief pursuant to Rule 3.850, Fla.R.Crim.P.  The court held an evidentiary hearing at which Mr. Blair was represented by appointed counsel.   The court identified *Strickland* as the controlling legal standard, and made findings of fact and conclusions of law in a written order as follows:

> **Defendant claims that if counsel had investigated a shoe imprint found on the victim's body, she would have discovered that the imprint did not match defendant's shoe, but instead matched Sharpe's. Defendant further claims that law enforcement officers actually made a comparison of the shoes worn by Defendant on the day of the murder and found that they did not match the imprint.  Defendant claims that if counsel had investigated and submitted this evidence, the jury would have had a reasonable doubt as to his guilt, and the outcome of his trial would have been different.  The Court does not agree.**

> **At the evidentiary hearing, Defendant admitted that he was not truthful in his motion; Defendant conceded that he was unaware as to whether the shoe imprint had ever been compared by law enforcement with Defendant's shoes.  Consequently, Defendant's allegation that his counsel acted deficiently by failing to discover the "comparison" made by law enforcement and submitting such evidence to the jury is not grounded in fact.   Defendant has failed to demonstrate that the evidence would have been in Defendant's favor if counsel had a comparison of the shoe imprint with his shoes.  In fact, this was the specific reason offered by Defendant's trial counsel at evidentiary hearing as to why she did not pursue a comparison of the shoe imprint on behalf of the defense.  Counsel testified that her position was that if she had performed a comparison, and the shoes and imprint matched, she could not argue to the jury that it was unknown whether the imprint matched Defendant's shoes. Counsel opted for the "better position" of arguing that it was the State's duty and the State's burden to test the evidence.  The Court finds that this was a reasonable and sound trial strategy.**

(Ex. P, pp. 71-72) (footnotes omitted).

**Federal Review of State Court Decision**

"Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component.  The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct.  By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact . . . ."  *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998); *Jackson v. Herring*, 42 F.3d 1350, 1357 (11th Cir. 1995).

Counsel's tactical decisions on which defense to pursue are "virtually unchallengeable."  *Provenzano*, 148 F.3d at 1332 (quoting *Strickland*)*;  Waters v. Thomas,* 46 F.3d 1506, 1522 (11th Cir. 1995)); *cf Miller v. Anderson*, 255 F.3d 455, 458 (7th Cir. 2001) (the fact that something was a tactical decision does not immunize it from review under *Strickland*).  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation marks and citation omitted); *see also Waters v. Thomas*, 46 F.3d at 1518-19 (observing that "[w]e cannot, and will not, second guess" the "strategic decisions trial counsel are called upon to make").  "[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy."  *Johnson v. Alabama,* 256 F.3d 1156, 1176 (11th Cir. 2001).

After all, "[t]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a

particular client in the same way." *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065; *accord, e.g., Waters v. Thomas*, 46 F.3d at 1522 ("Three different defense attorneys might have defended Waters three different ways, and all of them might have defended him differently from the way the members of this Court would have, but it does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance.").

In fact, "a lawyer can make a reasonable decision that no matter what an investigation might produce, he wants to steer clear of a certain course." *Rogers v. Zant*, 13 F.3d at 387. Accordingly, counsel's decision to curtail investigative efforts is also presumed reasonable, and the exclusion of other viable defenses does not establish ineffective assistance unless it is demonstrated that the course counsel actually chose was itself unreasonable. *Chandler*, 218 F.3d at 1318. "Counsel is also not required to have a tactical reason - above and beyond a reasonable appraisal of a claim's dismal prospects for success - for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, __ U.S. __, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009).

Likewise, counsel's decision whether to call a particular witness is also a matter of trial strategy entitled to great deference. *Chandler*, 218 F.3d at 1314 n. 14 (citing *Waters v. Thomas*, 46 F.3d at 1512, 1518-19). "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." *Waters*, 46 F.3d at 1514. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978).[9]

---

[9]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

The Rule 3.850 court found, as fact, that Mr. Blair could not support his false claim that law enforcement had concluded that the mark on the victim's body did not match Mr. Blair's shoe.  The court further found, as fact, that counsel made a strategic decision not to have the shoes and the mark compared.  Those findings are presumptively correct, and having reviewed the transcript, this court finds them amply supported by the record.

That leaves the legal question of whether the strategy was reasonable. Assuming for purposes of discussion that there was a shoe print on the victim's body that reasonably could have been compared to the shoes worn by Mr. Blair and Mr. Sharpe, defense counsel had only two choices.  If she had the prints compared, the possible results were that the print was made by Mr. Blair, the print was made by Mr. Sharpe, or the comparison was inconclusive.  On the other hand, not having a comparison made allowed only one outcome, that there was no comparison so the result was unknown.

Based on these bare possibilities counsel faced a dilemma.  In such a case she would obviously consult with her client, and although she testified that she had no independent recollection of having done so, that does not put the matter to rest. The record of the Rule 3.850 evidentiary hearing, including Mr. Blair's testimony, gives this court no cause to doubt that counsel was reasonable in deciding not to pursue a print comparison.

At the Rule 3.850 hearing, Mr. Blair admitted that his motion misrepresented the facts concerning whether the shoes and the mark on the victim were compared by law enforcement (ex. N, pp. 44-45).  He admitted that he told law enforcement that he had grabbed the victim around the neck and took her to the ground and that he just snapped, that this was disclosed to the jury, and that the pathologist testified that the victim died by strangulation (*id*. at 45-46).  He did not testify that he told his counsel that Mr. Sharpe stomped on the victim, or that he even got out of the truck.

If he had credibly told his counsel that Mr. Sharpe had stomped on the victim, there would have been a reasoned basis for taking the chance of having the prints compared. Without any such input from Mr. Blair, however, counsel reasonably determined that the defense was better off arguing that there had been no proof of where the mark came from, than taking the risk of proving that the mark was made by Mr. Blair. *Chandler v. United States*, 218 F.3d at 1324 ("The reasonableness of a trial counsel's acts, including lack of investigation . . ., depends critically upon what information the client communicated to counsel.") (internal quotation marks omitted); *see also Van Poyck v. Fla. Dep't of Corrections*, 290 F.3d 1318, 1325 (11th Cir. 2002) ("Information supplied by a petitioner is extremely important in determining whether a lawyer's performance is constitutionally adequate."). Counsel's decision is typical of that made by defense counsel every day, and it is exactly the kind of decision that is "virtually unchallengeable." *Provenzano*, *supra.* Counsel's decision not to have a comparison made was reasonable.

Moreover, Mr. Blair has not presented this court with any facts to support his claim that having a comparison made would have made a difference. He was represented by counsel in the Rule 3.850 proceeding, but offered no proof that the mark on the victim did, in fact, come from Mr. Sharpe's shoe. His entire claim is based on unsupported speculation. This court will not "'blindly accept speculative and inconcrete claims . . . .'" *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) (quoting *Baldwin v. Blackburn*, 653 F.2d 942, 947 (5th Cir. 1981)). Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971). Thus, "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980).

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

3.     Ineffective assistance of counsel - failure to call witness

For his last claim for relief Mr. Blair contends that counsel should have called Mr. Sharpe as a witness. He reasons that it was undisputed that Mr. Sharpe told the police in a recorded statement that he was wearing boots the night of the murder, but a video from the Red Baron showed he was wearing tennis shoes. Had counsel presented this evidence to the jury, Mr. Sharpe would have been shown to have been untruthful, and the outcome of the case would have been different because the state's only evidence of how the murder occurred came from Mr. Sharpe.

State Court Decision

This claim was presented in Mr. Blair's motion for post-conviction relief. The Rule 3.850 court dismissed it summarily without a hearing, but in its order of denial referred to some of the testimony from the Rule 3.850 evidentiary hearing. The court found as follows:

> Defendant cannot demonstrate that the alleged fact that evidence demonstrating that both Sharpe and Defendant were wearing the same type of shoe that could have made the imprint on the victim's body would have created a difference in the outcome of Defendant's trial. Additionally, counsel testified at evidentiary hearing that although she could have possibly impeached Sharpe's testimony regarding his footwear, she did not believe that the issue was relevant to the victim's cause of death. While trial counsel admitted that it is possible Sharpe "could have been" lying, she pointed out that Sharpe's testimony was consistent with Defendant's statement as far as "how the victim was taken to the ground" by Defendant. The Court finds counsel's reasoning for not pursuing the line of questioning proposed by Defendant to be strategic in nature. Consequently, Defendant has failed to demonstrate that his counsel's actions were deficient, or that he was prejudiced. Defendant is not entitled to relief as to this

allegation.

**(Ex. P. pp. 73-74) (footnotes omitted).**

**Federal Review of State Court Decision**

As with the second ground herein, the Rule 3.850 court made a factual finding that counsel made a strategic decision not to call Mr. Sharpe.  That finding is presumptively correct, and having reviewed the transcript, this court sees no reason not to give it deference.   Counsel's decision not to call Mr. Sharpe was also reasonable.  Mr. Sharpe would have admitted on the stand that he lied to the police about what kind of shoes he was wearing, but that would have provided small comfort.  Mr. Sharpe had already testified for the state, and admitted that he lied to the police when he said (1) he did not go to the Red Baron lounge that night, (2) he did not know what happened to the girl, and (3) he did not recognize the victim in a photograph (ex. B, pp. 147-48).  Counsel did not make her choice in a vacuum.  Mr. Sharpe had already admitted to lying to the police on three critical issues.  Putting him back on the stand to admit to one more lie on a collateral issue would have accomplished little, if anything.  Mr. Blair was convicted because he admitted he took the victim to the ground.  If the jury disbelieved everything Mr. Sharpe said about the actual crime, there was no evidence to the contrary, and Mr. Blair was still stuck with his admission.

Calling Mr. Sharpe to query him on lying about his shoes would have added nothing to the abundant proof that he had initially lied to the police.  The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is respectfully RECOMMENDED that the 28 U.S.C. 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Alan Dale Blair* in the Circuit Court of Escambia County, Florida, case no.

02-5914, be DENIED, that this cause be DISMISSED, and that the clerk be directed to close the file.

At Pensacola, Florida, this 26th day of May, 2009.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**